## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TAMMI P. BOWDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 975 |
| vs. | ) | |
| | ) | Judge Rebecca Pallmeyer |
| KIRKLAND & ELLIS LLP, | ) | |
| an Illinois limited liability partnership, | ) | |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, TAMMI P. BOWDEN, by and through her attorneys, HOLMAN & STEFANOWICZ, LLC, and for her First Amended Complaint against Defendant KIRKLAND & ELLIS, LLP, states as follows:

## INTRODUCTION

1.     This action seeks redress for wrongful discrimination in employment by the Defendant in disregard of the Plaintiff's rights in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000 *et seq.,* and 42 U.S.C. § 1981.  This action also alleges statutory violations against the Defendant under 18 U.S.C. §§ 2510 *et seq.* and Illinois statute 720 ILCS 5/14-1 *et seq.*  The Plaintiff seeks declaratory and injunctive relief as well as monetary damages for her injuries.

## JURISDICTION AND VENUE

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343.

3.      On October 6, 2005, the Plaintiff, TAMMI P. BOWDEN, filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR).  (A copy of the Plaintiff's Charge of Discrimination is attached hereto as "Exhibit 1.")

4.      On November 20, 2006, the EEOC issued Plaintiff a notice of right-to-sue on her EEOC Charge.  (A copy of the Plaintiff's notice is attached hereto as "Exhibit 2.") Plaintiff's original Complaint in her Title VII cause of action was filed on February 20, 2007 -- within 90 days of the receipt of her notice of right-to-sue.

5.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because all the events giving rise to the Plaintiff's claims occurred within this District, and at all times relevant the Plaintiff was a resident of this District, and the Defendant's principal place of business is within this District.

**PARTIES**

6.      At all times relevant hereto, the Plaintiff, TAMMI P. BOWDEN ("Bowden"), was a resident of Cook County, Illinois, and was employed by the Defendant, KIRKLAND & ELLIS, LLP, as a professional legal secretary from on or about December 2, 1996 until on or about February 16, 2007.

7.      Defendant, KIRKLAND & ELLIS, LLP ("Kirkland"), is an Illinois limited liability partnership established as a law firm doing business in the state of Illinois, City of Chicago, County of Cook.

## FACTS

8.      On or about December 2, 1996, the Defendant, Kirkland, hired the

Plaintiff, Bowden (African-American), as a Legal Secretary in Defendant's Chicago

office.  An oral contract of employment was thereafter obtained as between Plaintiff and

Defendant, from and including December 2, 1996 to and including February 16, 2007.

9.      From December 1996 until in or about August 2004, Defendant assigned

Bowden to work variously as a legal secretary directly for various attorneys at Kirkland;

as a "floater", filling in for other legal secretaries at Kirkland; and as a legal secretary for

special teams of attorneys assigned to various litigation and other projects.

10.      From September 1, 2004 to and including February 16, 2007, Bowden was

assigned by the Defendant to work as a Floor Practice Support Specialist.

11.      From September 1, 2004 to March 10, 2005, Bowden's immediate

supervisor was Donna Amos ("Amos") (Caucasian), the Manager of Secretarial Services

of Defendant.

12.      From March 10, 2005, to and including February 16, 2007, Plaintiff's

immediate supervisor was Leigh Quinlisk ("Quinlisk") (Caucasian), the Coordinator

turned Supervisor of the Document Services Department of Defendant.  At all times

relevant hereto, Amos was the immediate supervisor of Quinlisk.

13.      Amos and Quinlisk favored non-African American employees to the

detriment of African American employees and were hostile to the African American

employees on account of their race.

14.     The attitudes and conduct of Amos and Quinlisk created an atmosphere in the workplace that was hostile to African Americans in general and to the Plaintiff in particular.

15.     In March 2005 and thereafter, Plaintiff suffered from the following acts of racial discrimination and retaliation by Amos and Quinlisk and was aware of previous acts of racial discrimination committed by Amos and/or Quinlisk toward other African American employees, including but not limited to the following:

a.      Application of discipline to Plaintiff because of her race, that was without basis or justification;

b.      Application of discipline to other African American employees, because of their race, that without basis or justification;

c.      Targeting of Plaintiff for workplace discipline by scrutinizing her work at levels not applied to other Caucasian or non-African American employees;

d.      Targeting of other African American employees for workplace discipline by scrutinizing their work at levels not applied to other, Caucasian or non-African American employees;

e.      Denial to Plaintiff of training and other opportunities for advancement while granting opportunities to train non-African American employees and otherwise assisting them in pursuit of opportunities for advancement;

f.      Denial to other African American employees of training and other opportunities for advancement while granting opportunities to train non-African American employees and otherwise assisting them in pursuit of opportunities for advancement;

g.      Overburdening Plaintiff with an assignment and demanding its completion under impossible terms and conditions, while allowing a non-African American department worker to whom the work was assigned originally to work unproductively or not at all;

h.     Ignoring Plaintiff's protests regarding the impossibility of simultaneous completion of multiple and conflicting tasks, including orders from Defendant to travel to New York City and Washington D.C., while refusing to re-assign the work to a non-African American department employee who Defendant knew was available to complete the task assigned to Plaintiff;

i.     Reprimanding Plaintiff, in writing, for not completing an assignment that Plaintiff had been assured would be reassigned to her co-workers in light of Plaintiff's client workload and criticizing Plaintiff's work without justification, while allowing a non-African American employee to idle her time, failing to criticize the work of that non-African American employee, and requiring Plaintiff to correct the work of that non-African American employee;

j.     Creating separate tests for African American and Caucasian or non-African American job applicants and candidates for assignment and promotions;

k.     Creating a test for African American job applicants and candidates for assignments and promotions which were designed to ensure that the applicant taking such tests would fail them;

l.     Refusing to permit African American applicants for jobs and candidates for assignment and promotions to submit successive applications while permitting non-African American applicants and candidates to submit successive applications;

m.     Delaying the processing of applications of African American employees for jobs, assignments, and promotions, while expediting the processing of applications of non-African American persons for jobs, assignments, and promotions; and

n.     Targeting African American employees for termination of employment.

16.     The aforementioned conduct of Quinlisk occurred with the knowledge and approval or acquiescence of Amos.

17.     In or about September 2005, Plaintiff complained internally to partners within Kirkland and to Defendant's Human Resources Department of racial discrimination, as described *supra*, suffered by Plaintiff and by other African American employees.

18.     Defendant failed and refused to redress the racial discrimination of which Plaintiff complained of internally, and the discriminatory conduct, described *supra*, continued and escalated.

19.     Subsequent to Plaintiff's internal complaints regarding racial discrimination, the Defendant, by and through its agents and employees, Amos and Quinlisk, retaliated against Plaintiff by committing the following retaliatory acts, which included but are not limited to:

    a.     Defendant reprimanded Plaintiff in writing on false and pretextual charges of insubordination, gave her a "final warning", and threatened to terminate her employment;

    b.     Quinlisk and Amos solicited negative reviews of Plaintiff from other personnel in Kirkland in the hope of confecting colorable grounds for the termination of the Plaintiff's employment;

    c.     Defendant monitored Plaintiff's private non-work related activities and communications for the purposes of harassing the Plaintiff; determining who, if anyone, was assisting and/or encouraging Bowden in her efforts to protest the racial discrimination practiced by the Defendant; inducing Plaintiff to leave Defendant's employment, and in the further hope of confecting colorable grounds for the termination of Plaintiff's employment.

20.     Fearing Defendant's termination of her, Bowden did not complain to the Defendant's Human Resource Department of the retaliation as described *supra*, rather the Plaintiff submitted her complaints of the retaliation and discrimination to the EEOC.

21.     Subsequent to her EEOC Charge of Discrimination, Defendant failed and refused to redress the retaliation of which Plaintiff complained, and such retaliation continued and escalated.

22.     On February 16, 2007, Defendant constructively discharged Plaintiff.

### COUNT I
### (Title VII Violation - Race Discrimination)

23.     Plaintiff restates and realleges by reference paragraphs 1 through 22 above as though fully set forth herein.

24.     The actions of the Defendant, as perpetrated by its agents, including Amos and Quinlisk, and as described and complained of hereinabove, are unlawful employment practices in that they likely have the effect and did have the effect of discriminating against, depriving and tending to deprive equal employment to, engaging in treatment disparate from that accorded to non-African Americans, and otherwise adversely affecting the Plaintiff because of her race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.

25.     The Plaintiff, and all other African American employees who work at Kirkland's Chicago offices, have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  The Plaintiff, and all other African American employees who work for the Defendant have in the past and are continuing to suffer irreparable injury from the Defendant's discriminatory acts and omissions.

26.     The Defendant had direct knowledge of the racially harassing conduct described herein.  The Defendant knew that the incidents of racially harassing conduct were unwelcome to the Plaintiff.  The Defendant knew or should have known that these

incidents were so pervasive and extreme that they affected and altered the Plaintiff's conditions of employment and created an offensive, intimidating, hostile and abusive work environment, and ultimately led to her constructive discharge.

27.     The Defendant had direct knowledge that its treatment of the Plaintiff was disparate from that accorded to non-African American employees that were similarly situated to the Plaintiff.

28.     The actions on the part of the Defendant have caused and continue to cause the Plaintiff to suffer humiliation, embarrassment and anguish all to her damage.

29.     The actions on the part of the Defendant have caused and continue to cause the Plaintiff substantial losses in earnings and other employment benefits.

30.     The Defendant did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring the Plaintiff from an improper and evil motive amounting to malice and in conscious disregard of the Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests:

a.      All wages and benefits the Plaintiff would have received but for the discrimination, including pre-judgment interest;

b.      Compensatory damages in an amount to be determined at trial to compensate the Plaintiff for depression, humiliation, anguish, emotional distress, and defamation, caused by the Defendant's conduct;

c.      Award the Plaintiff punitive damages;

d.      The Defendant be required to pay prejudgment interest to the Plaintiffs on these damages;

e.      A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

f.      A permanent injunction requiring that the Defendant adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. §§ 2000e *et seq.*;

g.      The Court retain jurisdiction of this case until such time as it is assured that the Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

h.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

i.      Such other relief as the Court deems just and proper.


## COUNT II
### (42 U.S.C. § 1981 – Race Discrimination)

31.     Plaintiff restates and realleges by reference paragraphs 1 through 22 above as though fully set forth herein.

32.     The actions of the Defendant, as perpetrated by its agents, including Amos and Quinlisk, and as described and complained of hereinabove, are unlawful employment practices in that they were intentional acts of discrimination against the Plaintiff because of her race, in violation of 42 U.S.C. § 1981.

33.     The Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  The Plaintiff, and all African-American employees who work for the Defendant, have in the past and are continuing to suffer irreparable injury from the Defendant's discriminatory acts and omissions.

34.     The actions on the part of the Defendant have caused and continue to cause the Plaintiff to suffer humiliation, embarrassment and anguish all to her damage.

35.     The actions on the part of the Defendant have caused and continue to cause the Plaintiff substantial losses in earnings and other employment benefits.

36.     The Defendant did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring the Plaintiff from an improper and evil motive amounting to malice and in conscious disregard of the Plaintiff's rights.

WHEREFORE, the Plaintiff respectfully requests:

a.      All wages and benefits the Plaintiff would have received but for the discrimination, including pre-judgment interest;

b.      Compensatory damages in an amount to be determined at trial to compensate the Plaintiff for depression, humiliation, anguish, emotional distress, and defamation, caused by the Defendant's conduct;

c.      Award the Plaintiff punitive damages;

d.      The Defendant be required to pay prejudgment interest to the Plaintiff on these damages;

e.      A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

f.      A permanent injunction requiring that the Defendant adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1981;

g.      The Court retain jurisdiction of this case until such time as it is assured that the Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

h.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

i.      Such other relief as the Court deems just and proper.

## COUNT III
### (Title VII Violation – Retaliation)

37.     The Plaintiff restates and realleges by reference paragraphs 1 through 22 above as fully set forth herein.

38.     The actions of Defendant, as perpetrated by its agents and as described and complained of hereinabove, are unlawful employment practices in that they likely have the effect and did have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting the Plaintiff, and by engaging  and condoning retaliatory conduct the Defendant retaliated against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*

39.     The Defendant intentionally subjected the Plaintiff to unequal and discriminatory treatment by retaliating against her for complaining about racial discrimination and by refusing and failing to protect Plaintiff from retaliation, including without limitation, the following:

a.      Engaged in and condoned a campaign of harassment, intimidation, and discrimination against Plaintiff in retaliation for complaining to Defendant's Human Resources Department and various partners of Kirkland;

b.      Engaged in and condoned a campaign of harassment, intimidation, and discrimination against Plaintiff in retaliation for filing an EEOC Charge of Discrimination regarding the racial discrimination and retaliation Bowden was experiencing by the Defendant;

c.      Failed to properly investigate Plaintiff's charges of discrimination and retaliation;

d.      Constructively discharged Plaintiff's employment as a result of her complaints of racial discrimination and her filing of a Charge of Discrimination with the EEOC.

40.     The actions of the Defendant of intentionally engaging in and condoning discrimination and retaliation against the Plaintiff have caused her great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

41.     The Defendant did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring the Plaintiff from an improper and evil motive amounting to malice and in conscious disregard of the Plaintiff's rights.

WHEREFORE, the Plaintiff respectfully requests:

a.     All wages and benefits the Plaintiff would have received but for the discrimination, including pre-judgment interest;

b.     Compensatory damages in an amount to be determined at trial to compensate the Plaintiff for depression, humiliation, anguish, emotional distress, and defamation, caused by the Defendant's conduct;

c.     That Defendant be required to pay prejudgment interest to the Plaintiff on these damages;

d.     Award the Plaintiff punitive damages;

e.     A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

f.     A permanent injunction requiring that the Defendant adopt employment practices and policies in accord and conformity with the requirements of Title VII, 42 U.S.C. §§ 2000e *et seq.*;

g.     The Court retain jurisdiction of this case until such time as it is assured that the Defendant has remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

h.     An award of reasonable attorneys' fees, costs, and litigation expenses; and

i.     Such other relief as the Court deems just and proper.

## COUNT IV
### (42 U.S.C. § 1981 – Retaliation)

42.     The Plaintiff restates and realleges by reference paragraphs 1 through 22 above as fully set forth herein.

43.     The actions of Defendant, as perpetrated by its agents and as described and complained of hereinabove, are unlawful employment practices in that they likely have the effect and did have the effect of discriminating against, depriving and tending to deprive equal employment to and were intentional acts of retaliation against the Plaintiff in violation of 42 U.S.C. § 1981.

44.     The Defendant intentionally subjected the Plaintiff to unequal and discriminatory treatment by retaliating against her for complaining about racial discrimination and by refusing and failing to protect Plaintiff from retaliation, including without limitation, the following:

  a.     Engaged in and condoned a campaign of harassment, intimidation, and discrimination against Plaintiff in retaliation for complaining to Defendant's Human Resources Department and various partners of Kirkland;

  b.     Engaged in and condoned a campaign of harassment, intimidation, and discrimination against Plaintiff in retaliation for filing an EEOC Charge of Discrimination regarding the racial discrimination and retaliation Bowden was experiencing by the Defendant;

  c.     Failed to properly investigate Plaintiff's charges of discrimination and retaliation;

  d.     Constructively discharged Plaintiff's employment as a result of her complaints of racial discrimination and her filing of a Charge of Discrimination with the EEOC.

45.     The actions of the Defendant of intentionally engaging in and condoning discrimination and retaliation against the Plaintiff have caused her great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

46.     The Defendant did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring the Plaintiff from an improper and evil motive amounting to malice and in conscious disregard of the Plaintiff's rights.

WHEREFORE, the Plaintiff respectfully requests:

a.      All wages and benefits the Plaintiff would have received but for the discrimination, including pre-judgment interest;

b.      Compensatory damages in an amount to be determined at trial to compensate the Plaintiff for depression, humiliation, anguish, emotional distress, and defamation, caused by the Defendant's conduct;

c.      That Defendant be required to pay prejudgment interest to the Plaintiff on these damages;

d.      Award the Plaintiff punitive damages;

e.      A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

f.      A permanent injunction requiring that the Defendant adopt employment practices and policies in accord and conformity with the requirements of 42 U.S.C. § 1981;

g.      The Court retain jurisdiction of this case until such time as it is assured that the Defendant has remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

h.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

i.      Such other relief as the Court deems just and proper.

## COUNT V
### (18 U.S.C §§ 2510 *et seq.* – Interception of Wire and Electronic Communications)

47.     The Plaintiff restates and realleges by reference paragraphs 1, 2 and 5 through 12 above as fully set forth herein.

48.     In July and August 2005, Plaintiff Bowden was communicating with Nancy Gagen ("Gagen") typically via telephone since Bowden worked first shift and Gagen worked second shift in the Document Services Department at Kirkland.

49.     In July and August 2005, the phone records demonstrate that between the hours of 9:00 a.m. and 3:00 p.m. Gagen would call Bowden at her Kirkland work direct-dial phone number (312-861-xxxx)[1], and Bowden would call Gagen at her residence phone number (773-725-xxxx).

50.     In July and August 2005, Bowden discussed with Gagen, via telephone, her observations and concerns of racial discrimination within the Document Services Department at Kirkland.  Gagen discussed with Bowden, via telephone, her knowledge and observations of a pattern of race discrimination within the Document Services Department at Kirkland.

51.     In late August 2005, Bowden and Gagen discussed, via telephone, the need for Bowden to complain about the discriminatory treatment within the Document Services Department at Kirkland.

52.     On or about September 3, 2005, Bowden filed an internal complaint of racial discrimination and harassment with certain partners of Kirkland and its Human Resource Manager.

---

[1]     Private unpublished telephone numbers have the last four digits redacted throughout the First Amended Complaint.

53.     On or about September 21, 2005, Bowden was required to meet with Gary Beu, Kirkland's Chief Human Resources Officer, regarding her complaints of racial discrimination.

54.     Between September 3, 2005 and September 24, 2005, Bowden and Gagen continued their communications, via telephone, in their typical fashion where Gagen would call Bowden at her Kirkland work direct-dial phone number (312-861-xxxx), and Bowden would call Gagen at her residence phone number (773-725-xxxx).

55.     Prior to September 24, 2005, telephone records demonstrate that Bowden would make personal telephone calls from her Kirkland workstation, to Gagen and others, sometimes using her personal cell phone (312-316-xxxx) and other times using her Kirkland work phone (312-861-xxxx).

56.     On or about September 24, 2005, Bowden deliberately decided to stop using her Kirkland work phone (312-861-xxxx) for personal telephone calls from her Kirkland workstation.

57.     On or about September 24, 2005, Bowden and Gagen agreed that when Bowden is at work that they will communicate, via telephone, only using Bowden's cell phone (312-316-xxxx), and that Gagen would not call Bowden's Kirkland work phone (312-861-xxxx).

58.     On or about September 27, 2005, Kirkland placed Bowden on a disciplinary final warning.  The final warning indicated that any subsequent infractions of Kirkland's policies, including without limitation, the use of Kirkland's phones for personal calls, could lead to immediate termination of Bowden's employment.

59.     Phone records demonstrate that Bowden had stopped using her Kirkland work phone (312-861-xxxx) as of September 24, 2005 for personal phone calls, and that Bowden used her cell phone (312-316-xxxx) for personal calls made from her workstation at Kirkland.

60.     On or about October 5, 2005, Bowden filed her Charge of Discrimination with the EEOC against Kirkland.

61.     On or about October 14, 2005, Bowden was required to meet with Gary Beu, Kirkland's Chief Human Resources Officer, regarding his investigative findings of Bowden's complaints of racial discrimination.

62.     On information and belief, on or about October 17, 2005, Kirkland, by and through its employees and agents, intentionally began the interception of Bowden's cell phone calls that she made from her workstation at Kirkland located on the south wall of the 56th Floor of the Aon Center in Chicago, Illinois.

63.     Subsequent to October 17, 2005, Bowden's Cingular cell phone bills for her cell phone (312-316-xxxx) do not document any of the cell phone calls that Bowden made or received while at her workstation at Kirkland on the south wall of the 56th Floor of the Aon Center.  During this time period, Bowden was using her cell phone (312-316-xxxx) almost exclusively for all outbound and inbound personal phone calls while at her Kirkland workstation.

64.     During the interception period, Bowden made personal telephone calls to Gagen while at her Kirkland workstation that do not appear on Bowden's Cingular cell phone bills for her cell phone (312-316-xxxx).  However, during this same time period, calls made by Bowden to Gagen, and others, and calls made by Gagen, and others, to

Bowden when Bowden was not at her Kirkland workstation do appear on Bowden's Cingular cell phone bills for her cell phone (312-316-xxxx).

65.     On information and belief, Kirkland, by and through its employees and agents, used a wireless voice access device to "hijack" Bowden's Cingular signal for incoming and outgoing calls to and from Bowden's cell phone (312-316-xxxx), while she was located at her Kirkland workstation.

66.     The "hijacking" of Bowden's Cingular telecommunications signal was effective only when she was at or near her assigned Kirkland workstation on the south wall of the 56th floor of the Aon Center building in Chicago, Illinois.

67.     On information and belief, once Kirkland's wireless voice access device "hijacked" the Cingular signal from an incoming call to Bowden's cell phone (312-316-xxxx), the call was brought into Kirkland's telecommunications network.  Kirkland utilized its AT&T local outgoing circuit to conduct the call.

68.     On information and belief, once the Cingular signal from an incoming call to Bowden's cell phone (312-316-xxxx) was brought into Kirkland's telecommunications network, Kirkland was able to record and/or listen to the intercepted communication.

69.     During the interception period, Bowden's Cellular cell phone records did not register any of the incoming calls to Bowden's cell phone (312-316-xxxx), while she was located at or near her Kirkland workstation.

70.     During the interception period, phone records from individuals calling Bowden's cell phone (312-316-xxxx), while she was located at or near her Kirkland workstation, show Bowden's assigned Kirkland phone number (312-861-xxxx), despite the fact that the call was made to Bowden's cell phone (312-316-xxxx).

71.     During the interception period, Gagen's AT&T wireline phone records list Bowden's assigned Kirkland phone number (312-861-xxxx), for calls that Gagen made to Bowden's cell phone (312-316-xxxx) while Bowden was at or near her assigned Kirkland workstation.  During this period, Gagen deliberately did not call Bowden's assigned Kirkland phone number (312-861-xxxx).

72.     On information and belief, during the interception period, Kirkland, by and through its employees and agents, used a wireless voice access device to "hijack" the Cingular signal for outgoing calls made on Bowden's cell phone (312-316-xxxx) while Bowden was at or near her assigned Kirkland workstation on the south wall of the 56th floor of the Aon Center building in Chicago, Illinois.

73.     On information and belief, once Kirkland's wireless voice access device "hijacked" the Cingular signal from an outgoing call from Bowden's cell phone (312-316-xxxx), the call was brought into Kirkland's telecommunications network.  Kirkland's telecommunications network utilized its VoIP provider, Level 3 Communications, to conduct the outgoing call.

74.     On information and belief, once the Cingular signal from an outgoing call from Bowden's cell phone (312-316-xxxx) was brought into Kirkland's VoIP telecommunications network, Kirkland was able to record and/or listen to the intercepted communication.

75.     During the interception period, if Bowden was calling a cell phone from her cell phone (312-316-xxxx), while located at or near her Kirkland workstation, the cell phone bill of the person receiving Bowden's call would show the incoming call as

Kirkland's main phone line (312-861-2000). Bowden did not initiate the calls from Kirkland's main phone line (312-861-2000).

76.     During the interception period, calls made by Bowden's cell phone (312-316-xxxx) while located at or near her Kirkland workstation, to Gagen's residence (773-725-xxxx), would be listed on Gagen's AT&T wireline phone records as an incoming call from one of Kirkland's assigned Level 3 Communications VoIP numbers (312-895-xxxx). During this time period, Bowden did not have access to Kirkland's assigned Level 3 Communications VoIP number (312-895-xxxx).

77.     On information and belief, during the interception period, Kirkland, by and through its employees and agents, engaged in caller identification "spoofing" by programming its telcommunications network so that when Bowden used her cell phone (312-316-xxxx), while located at or near her Kirkland workstation, to call Gagen's residence (773-725-xxxx), Gagen's caller identification would display Bowden's cell phone number (312-316-xxxx). Gagen's caller identification would match Bowden's cell phone number (312-316-xxxx), so it would appear to Gagen that Bowden was calling from her cell phone. This caller identification "spoofing" was done by Kirkland to avoid discovery by Bowden and Gagen of its phone call interception.

78.     On information and belief, through the use of caller identification "spoofing," Kirkland was able to prevent discovery of its interception of phone calls between Bowden and Gagen.

79.     During the interception period, Bowden's outgoing cell phone calls made when she was located at or near her Kirkland workstation did not register on her Cingular bill for her cell phone (312-316-xxxx).

80.     On or about March 13, 2006, the date that Kirkland terminated Gagen's employment, it appears from the phone records that Kirkland's interception of Bowden's incoming and outgoing phone calls to and from Bowden's cell phone (312-316-xxxx), when she was located at or near her Kirkland workstation, stopped.

81.     On information and belief, Kirkland used information that it improperly received from listening to the intercepted phone calls between Bowden and Gagen to help defend itself against Bowden's claims of discrimination, and to terminate Gagen's employment and to harass and retaliate against Bowden.

82.     At all times during the interception period — October 14, 2005 through March 13, 2006 — the interception of wire, oral or electronic communications was prohibited pursuant to 18 U.S.C. §§ 2510 *et seq*.

83.     At all times during the interception period — October 14, 2005 through March 13, 2006 — the use of any electronic, mechanical or other device to intercept any oral communication was prohibited pursuant to 18 U.S.C. §§ 2510 *et seq*.

84.     At all times during the interception period — October 14, 2005 through March 13, 2006 — the disclosure and use of any information that was obtained through the interception of a wire, oral, or electronic communication was prohibited pursuant to 18 U.S.C. §§ 2510 *et seq*.

85.     At all times during the interception period — October 14, 2005 through March 13, 2006 — any person whose wire, oral or electronic communication is intercepted, disclosed or intentionally used may recover in a civil action from the person or entity engaged in the violation pursuant to 18 U.S.C. § 2520.

86.     On information and belief, at all times during the interception period, Kirkland, by and through its employees and agents, improperly used electronic, mechanical or other device to intercept incoming and outgoing calls to Bowden's cell phone (312-316-xxxx), while Bowden was located at or near her Kirkland workstation, and improperly disclosed and used the communications between Bowden and Gagen, and others, for improper purposes, including without limitations, defending Bowden's discrimination claims, and the termination of Gagen in violation of 18 U.S.C. §§ 2510 *et seq*.

87.     The Defendant did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring the Plaintiff from an improper and evil motive amounting to malice and in conscious disregard of the Plaintiff's rights.

WHEREFORE, the Plaintiff respectfully requests:

a.      Actual damages suffered by the Plaintiff;

b.      Statutory damages pursuant to 18 U.S.C. § 2520(c);

c.      An award of punitive damages;

d.      A permanent injunction enjoining the Defendant from engaging in the improper practices complained of herein;

e.      An award of reasonable attorneys' fees, costs, and litigation expenses; and

f.      Such other relief as the Court deems just and proper.

## COUNT VI
### (720 ILCS 5/14-1 *et seq*. – Eavesdropping)

88.     The Plaintiff restates and realleges by reference paragraphs 47 through 81 above as fully set forth herein.

89.     At all times during the interception period — October 14, 2005 through March 13, 2006 — the interception of oral or electronic communications was prohibited pursuant to 720 ILCS 5/14-1 *et seq*.

90.     At all times during the interception period — October 14, 2005 through March 13, 2006 — the use of any eavesdropping device to intercept any oral and/or electronic communication was prohibited pursuant to 720 ILCS 5/14-1 *et seq*.

91.     At all times during the interception period — October 14, 2005 through March 13, 2006 — the disclosure and use of any information that was obtained through the interception of a oral or electronic communication was prohibited pursuant to 720 ILCS 5/14-1 *et seq*.

92.     At all times during the interception period — October 14, 2005 through March 13, 2006 — any person whose oral or electronic communication is intercepted, disclosed or intentionally used may recover in a civil action from the person or entity engaged in the violation pursuant to 720 ILCS 5/14-6.

93.     On information and belief, at all times during the interception period, Kirkland, by and through its employees and agents, improperly used electronic, mechanical or other device to intercept incoming and outgoing calls to Bowden's cell phone (312-316-xxxx), while Bowden was located at or near her Kirkland workstation, and improperly disclosed and used the communications between Bowden and Gagen, and

others, for improper purposes, including without limitations, defending Bowden's

discrimination claims, and the termination of Plaintiff Gagen in violation of 720 ILCS

5/14-1 *et seq.*

94.     The Defendant did the acts herein alleged maliciously, fraudulently, and

oppressively and with wrongful intention of injuring the Plaintiff from an improper and

evil motive amounting to malice and in conscious disregard of the Plaintiff's rights.

WHEREFORE, the Plaintiff respectfully requests:

a.     Actual damages suffered by the Plaintiff;

b.     An award of punitive damages;

c.     A permanent injunction enjoining the Defendant from engaging in
the improper practices complained of herein;

d.     Such other relief as the Court deems just and proper.


Dated:  January 3, 2008                    Respectfully submitted,
                                           PLAINTIFF,

                                           s/ Brian R. Holman
                                           _____
                                           By:     One of her Attorneys

Brian R. Holman
Dennis H. Stefanowicz, Jr.
Tara Beth Davis
HOLMAN & STEFANOWICZ, LLC
Attorneys for the Plaintiff
30 South Wacker Drive, Suite 2425
Chicago, Illinois 60606
(312) 258-9700